IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| AUGUSTA VIDEO, INC., | * | |
| Plaintiff, | * | |
| v. | * | CV 108-099 |
| AUGUSTA, GEORGIA, a political subdivision of the State of Georgia, and the AUGUSTA-RICHMOND COUNTY COMMISSION, | * | |
| Defendants. | * | |

O R D E R

Before the Court is a motion to dismiss Counts I and VII of Plaintiff Augusta Video's amended complaint filed by Defendants Augusta, Georgia ("Defendant Augusta") and Augusta-Richmond County Commission ("Defendant ARCC") (doc. no. 16). Defendants also move to dismiss Plaintiff's "supplemental state law claim [for] direct appeal and alternate petition for writ of mandamus or certiorari" ("supplemental claim"). Based upon the pleadings and the relevant law, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

Defendants have also filed a motion to strike certain counts and allegations in the amended complaint (doc. no. 34).

DHB (34)  CCC:

Upon due consideration, Defendants' motion to strike is **DENIED** for the reasons explained below.

## I. BACKGROUND

This case comes before this Court after extensive and lengthy proceedings in a companion case,[1] <u>Augusta Video, Inc. v. Augusta-Richmond County, Georgia</u>, CV 102-094 (S.D. Ga. June 24, 2002) ("<u>Augusta Video I</u>"). Because the parties to this case are the same as those in <u>Augusta Video I</u>, and, in the interest of brevity, the Court will not provide a full recitation of the facts. Briefly, Plaintiff Augusta Video first filed an application to open an adult entertainment business in Augusta, Georgia in April 2002. In order to obtain a permit to operate its business, Plaintiff had to be in compliance with two separate ordinances: the Zoning Ordinance of the Augusta-Richmond County Land Development Code and the Adult Entertainment Ordinance of the Augusta-Richmond County Code. Plaintiff's application was denied by Defendant ARCC on June 18, 2002.

Plaintiff then filed suit in <u>Augusta Video I</u> on June 24, 2002, seeking declaratory and injunctive relief. Plaintiff challenged the constitutionality of Defendant ARCC's actions and the constitutionality of both zoning ordinances. In July

---

[1] The Court notes that Plaintiff violated Local Rule 3.1 by neglecting to file a certificate of related cases.

2002, Defendant ARCC struck the original Adult Entertainment Ordinance in its entirety and adopted a new version ("July 2002 ordinance"). Over the next few years, Plaintiff and Defendants continued to dispute whether Plaintiff was entitled to operate as an adult entertainment business.

The procedural history of Augusta Video I most relevant to the instant motion is as follows: In September 2007, the Eleventh Circuit issued a mandate after Plaintiff appealed the Court's grant of summary judgment to Defendants in Augusta Video I. The Eleventh Circuit held that Plaintiff was entitled to "grandfather" status for its use as an adult entertainment business in the B-2 zone.[2] See Augusta Video, Inc. v. Augusta-Richmond County, GA, 249 Fed. Appx. 93 (11th Cir. 2007). However, the Eleventh Circuit then stated:

> [T]his does not mean that [Plaintiff] may immediately open its doors; it means only that it is properly zoned to operate an adult business in the B-2 zone. [Plaintiff] must still comply with the remaining valid requirements of Augusta's original Zoning Ordinance, including the setback requirements. It must also obtain a Business Tax Certificate and an adult entertainment

---

[2] Under the original zoning ordinance, the area in which Plaintiff's business is located was classified as a B-2, or General Business, zone. Under the ordinance, adult entertainment establishments could be located in the B-2 zone with a special exception from the ARCC. (See Augusta Richmond County Land Development Code, §22-2(b).) Plaintiff was denied the special exception from the ARCC. Subsequently, two important events occurred. First, this Court declared relevant portions of the original zoning ordinance unconstitutional. Second, the ARCC adopted the July 2002 ordinance which eliminated the special exception for business in a B-2 zone. The parties continued to litigate over what this meant for Plaintiff's business. The Eleventh Circuit mandate of September 2007 partially resolved the matter by finding Plaintiff had "grandfather" status in the B-2 zone.

3

> establishment permit under the current Adult Entertainment Ordinance.

Id. at 99.

In determining how to apply this mandate, this Court conducted a status conference with the parties and requested that they submit specific recommendations as to how to proceed. Through the parties' recommendations, it became apparent that they disputed the impact of the mandate as to whether Plaintiff should be allowed to open for business. The Court considered the parties' arguments and entered an Order on December 27, 2007, narrowing the remaining issues and setting a new scheduling timeline.[3] (See Augusta Video I, Doc. No. 137.)

In response, Plaintiff filed a petition for a writ of mandamus in the Eleventh Circuit Court of Appeals, arguing, among other things, that the Court had not followed the Eleventh Circuit's mandate of September 6, 2007. The Eleventh Circuit disagreed, finding that "the district court is in compliance with the [September 6, 2007] mandate . . . ." (Id., Doc. No. 175.)

Defendants then filed a motion for partial summary judgment. (Id., Doc. No. 180.) Plaintiff responded to this

---

[3] Specifically, the Order stated that the remaining issues were: (1) whether Plaintiff could have opened its doors in the summer of 2002; (2) what were the legal requirements placed upon Plaintiff at the time by the applicable zoning and licensing scheme; (3) whether Plaintiff met said requirements; (4) whether the July 2002 ordinance is applicable to Plaintiff. (See Augusta Video I, Doc. No. 137.)

4

motion by arguing that the Eleventh Circuit mandate gave it grandfather status as a lawful, non-conforming use and thus it was entitled to operate from the first day it applied to do business. (Id., Doc. No. 187.) On March 24, 2009, this Court entered an Order granting Defendants' motion for partial summary judgment ("March 2009 Order").[4] (Id., Doc. No. 201.) The Court considered the Eleventh Circuit's mandate and concluded that "Plaintiff should have been able to open its doors for business on April 11, 2002." (Id., Doc. No. 180 at 24.) However, under the July 2002 ordinance, Plaintiff would no longer be eligible for a licensing permit because of its location in a "gateway corridor"[5] area. The Court concluded that Plaintiff's grandfather status did not preclude the application of the gateway corridor provision to it. Thus, Plaintiff's right to do business ended on July 18, 2002, when the July 2002 ordinance was enacted. The Court therefore granted summary judgment and determined the sole remaining

---

[4] Defendants' current motion to dismiss was filed the day before the March 2009 Order was entered. However, Plaintiff's response and Defendants' reply were filed after the entry of the Order. Of greater interest, Plaintiff's amended complaint was filed thereafter.

[5] The July 2002 amendments to the Adult Entertainment Ordinance include a prohibition against the location of an adult business within "an area designated as an Augusta gateway/corridor." Plaintiff's business is located within an area designated as a gateway corridor.

issue involved Plaintiff's claim for damages between April 11, 2002 and July 18, 2002.[6] (Id., Doc. No. 180 at 29.)

In 2008, Plaintiff attempted to obtain discovery in Augusta Video I related to an equal protection claim. Finding that in the six year history of the case, Plaintiff had not raised allegations or arguments about the treatment of other adult businesses, the Court declined to allow Plaintiff to open discovery for such information. Plaintiff filed the instant case on July 16, 2008, which includes claims for equal protection, First Amendment retaliation, takings, and due process. Defendants have moved to dismiss Counts I and VII and the supplemental claim of the amended complaint.

## II. MOTION TO DISMISS STANDARD

A motion to dismiss does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

---

[6] A non-jury trial on Plaintiff's claim for damages during this time period took place on August 17-18, 2009.

In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555 (internal citations and punctuation omitted).

The Court further stated that while there is no "probability requirement at the pleading stage," <u>id.</u> at 556, "something beyond . . . mere possibility . . . must be alleged," <u>id.</u> at 557-58 (citing <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 347 (2005)). Therefore, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," <u>id.</u> at 555, and sufficient "to state a claim to relief that is plausible on its face," <u>id.</u> at 570.

### III. COUNT I

Defendants move to dismiss Count I of Plaintiff's amended complaint on the grounds of collateral estoppel. Collateral estoppel, or issue preclusion, precludes "the re-litigation of an issue that has been previously litigated and decided." <u>Irvin v. U.S.</u>, 2009 WL 1579789 at *2 (11th Cir. June 4, 2009)

(citing Christo v. Padgett, 223 F.3d 1324, 1339 (11th Cir. 2000)). For collateral estoppel to apply, four prerequisites must be met: "(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been 'a critical and necessary part' of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." Id. (quoting Christo, 223 F.3d at 1339).

In Count I, Plaintiff asks this Court to enforce the mandate the Eleventh Circuit issued in its September 6, 2007 opinion. In consideration of this claim, the Court finds that the four prerequisites to collateral estoppel are met. The issue of how to interpret and enforce the Eleventh Circuit's mandate was raised in Augusta Video I, was actually litigated by the parties, and was a critical part of the March 2009 Order granting summary judgment. Plaintiff had a full and fair opportunity to litigate this issue. Furthermore, prior to the March 2009 Order, the Eleventh Circuit found that the Court was in compliance with the mandate. Therefore, it would be inappropriate for this Court to allow Plaintiff to proceed with Count I in the present action. Any concern Plaintiff has with the Court's interpretation of the Eleventh Circuit

mandate must be raised through appeal in <u>Augusta Video I</u>, not through re-litigation of the same issue in the present case. Accordingly, Defendants' motion to dismiss Count I is **GRANTED**.

## IV. COUNT VII

In Count VII of its amended complaint, Plaintiff raises a Fifth Amendment takings claim. Here, Plaintiff alleges that Defendants are attempting to employ their licensing and zoning laws in a retroactive manner to deprive Plaintiff of its vested property rights and that Defendants' refusal to issue licenses to which Plaintiff is entitled constitutes a taking of Plaintiff's vested property rights. (Am. Compl. ¶¶ 180, 185.) The principal allegation to which Defendants object is Plaintiff's contention that it has "vested rights as a lawful non-conforming use at its present location." (<u>See</u> <u>id.</u> ¶ 178.)

As stated above, the March 2009 Order in <u>Augusta Video I</u> specifically states what requirements Plaintiff must meet and what rights Plaintiff has pursuant to the Eleventh Circuit mandate. The parties are bound by this Order and Plaintiff will not be allowed to re-argue any issue addressed by that Order here. That being said, a Fifth Amendment takings claim was not litigated in <u>Augusta Video I</u>. Although Plaintiff raised the issue in its response to Defendants' motion for partial summary judgment, the "takings" issue was not

9

addressed in the March 2009 Order or any other Order entered in <u>Augusta Video I</u>. Thus, while Plaintiff is bound by the parameters set by the March 2009 Order, to the extent Plaintiff can raise a takings claim within those parameters, it is not collaterally estopped from doing so. Accordingly, Defendants' motion to dismiss Count VII of Plaintiff's amended complaint is **DENIED**.

### V. SUPPLEMENTAL CLAIM

In its amended complaint, Plaintiff filed a "supplemental state law claim [for] direct appeal and alternate petition for writ of mandamus or writ of certiorari." In this claim, Plaintiff asks this Court to review Defendant ARCC's decision to deny Plaintiff a license either by direct appeal or review by mandamus or certiorari. Defendants contend that this claim should be dismissed on the grounds of collateral estoppel. In the alternative, Defendants seek an order requiring Plaintiff to recast this claim in compliance with Federal Rule of Civil Procedure 8(a) and 8(d).

The Court agrees with Defendants that the claim does not comply with Rule 8. Plaintiff has structured the claim as a brief with arguments, rather than following the rules of notice pleading. However, the structural problems are immaterial because the claim is barred by collateral estoppel.

Plaintiff proffers four arguments in its supplemental claim: (1) Defendant ARCC failed to follow the mandate of the Eleventh Circuit and the final judgment of this Court; (2) the Code Enforcement Board violated Plaintiff's due process rights because it ignored the mandate of the Eleventh Circuit; (3) under state law, Plaintiff's status as a lawful, non-conforming use cannot be forfeited through the application of a licensing requirement enacted after the vested property rights accrued; and (4) the decision of Defendant ARCC was arbitrary and capricious.

Plaintiff raises these claims under the guise of judicial review; yet, it has already raised and litigated the issue of whether Defendant ARCC and the Code Enforcement Board acted properly in light of the Eleventh Circuit mandate in <u>Augusta Video I</u>. As stated above, the Eleventh Circuit found that this Court was in compliance with the mandate. Subsequently, this Court found that only during a brief period, from April 2002 through July 2002, was Plaintiff unlawfully prevented from opening its doors. Thus, this Court also found Defendants were in compliance with the Eleventh Circuit mandate. Moreover, the issue of Plaintiff's status as a lawful, non-conforming use was specifically addressed by the March 2009 Order in <u>Augusta Video I</u>, in which the Court found that the July 2002 ordinance applied to Plaintiff and thus

Plaintiff, because it is located in the gateway corridor, could not obtain a license. Therefore, any re-litigation of these arguments in the present case is precluded by collateral estoppel.[7]

In its reply brief, Plaintiff further argues that my decision on Plaintiff's federal constitutional claims in Augusta Video I does not bind this Court's application of state law to the forfeiture of Plaintiff's status as a lawful, non-conforming use in the instant case. However, the March 2009 Order fully considered Plaintiff's rights under Georgia law and determined that Plaintiff has no vested right in an adult entertainment license. (See March 2009 Order, at 27.) First, I reiterated that the Eleventh Circuit had concluded that the amended Adult Entertainment Ordinance was not a zoning ordinance. Then I considered Georgia law and found that in Georgia, "a property owner does not have a vested right in an annually renewed license," therefore, "it cannot be said that Plaintiff has a vested right in an adult entertainment license." Id. Thus, Plaintiff's right to an adult entertainment permit under Georgia law has been

---

[7] Although Plaintiff did not specifically argue that Defendant ARCC acted in an arbitrary and capricious manner in Augusta Video I, to the extent this argument is not collaterally estopped, it appears to this Court to be encompassed by Count VIII of Plaintiff's amended complaint, which has not been dismissed.

considered, and Plaintiff is collaterally estopped from re-litigating this issue here.

In sum, Plaintiff and Defendants are fully bound by the March 2009 Order of Augusta Video I. This Court will not countenance any attempt by Plaintiff or Defendants in the instant case to re-urge, re-argue, or re-litigate any issue already determined in Augusta Video I.

## VI. MOTION TO STRIKE

Defendants move to strike Counts I and VII for the same reasons advanced in their motion to dismiss. Based upon the foregoing analysis of Defendants' arguments with respect to these counts, their motion to strike Count I is moot and their motion to strike Count VII is denied.

Defendants also move to strike paragraphs 35B, 38, 62, 68, 69, and 195 because these paragraphs, for the most part, refer to Plaintiff's contention that this Court has misinterpreted and misapplied the Eleventh Circuit mandate of September 6, 2007.

Under Federal Rule of Civil Procedure 12(f), a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." The purpose of a motion to strike is "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial

matters." <u>McInerney v. Moyer Lumber & Hardware, Inc.</u>, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). Upon due consideration of the purpose behind Rule 12(f) and in light of this Court's strong admonition to the parties that it will not allow re-litigation of issues previously decided in <u>Augusta Video I</u>, there is no reason to strike the subject paragraphs from the amended complaint.

### VII. CONCLUSION

Upon the foregoing, Defendants' motion to dismiss (doc. no. 16) is **GRANTED IN PART** and **DENIED IN PART**. Count I and the Supplemental Claim of Plaintiff's amended complaint are hereby **DISMISSED**. Plaintiff's takings claim under Count VII of the amended complaint remains. Defendants' motion to strike (doc. no. 34) is **DENIED**.

Defendants shall file their answer(s) or otherwise respond to the remaining claims of Plaintiff's amended complaint within ten (10) days of the date of this Order.

**ORDER ENTERED** at Augusta, Georgia, this _____ day of September, 2009.

_____
UNITED STATES DISTRICT JUDGE